1

```
              UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
                   ALEXANDRIA DIVISION

UNITED STATES OF AMERICA,      .    Civil Action No. 1:07cv529
ex rel. PAUL FRASCELLA,        .
                               .
             Relator,          .
                               .
      vs.                      .    Alexandria, Virginia
                               .    October 29, 2010
ORACLE CORP., et al.,          .    9:45 a.m.
                               .
             Defendants.       .
                               .
. . . . . . . . . . . .

                 TRANSCRIPT OF MOTION HEARING
           BEFORE THE HONORABLE LEONIE M. BRINKEMA
                 UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

FOR THE UNITED STATES:         GERARD MENE, AUSA
                               United States Attorney's Office
                               2100 Jamieson Avenue
                               Alexandria, VA 22314
                                 and
                               DAVID B. WISEMAN, ESQ.
                               CHRISTELLE KLOVERS, ESQ.
                               MELISSA HANDRIGAN, ESQ.
                               United States Department of Justice
                               601 D Street, N.W., Room 9032
                               Washington, D.C. 20004


FOR THE DEFENDANTS:            DREW HARKER, ESQ.
                               CAMERON W. FOGLE, ESQ.
                               Arnold & Porter LLP
                               555 - 12th Street, N.W.
                               Washington, D.C. 20004
                                 and
                               KRISTEN E. ITTIG, ESQ.
                               Arnold & Porter LLP
                               1600 Tysons Boulevard, Suite 900
                               McLean, VA 22102-4865

                     (Pages 1 - 13)

         COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1  ALSO PRESENT:              DEBORAH J. MILLER, ESQ.

 2
    OFFICIAL COURT REPORTER:   ANNELIESE J. THOMSON, RDR, CRR
 3                             U.S. District Court, Fifth Floor
                               401 Courthouse Square
 4                             Alexandria, VA 22314
                               (703)299-8595
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        P R O C E E D I N G S

2            THE CLERK:  Civil Action 07-529, Paul Frascella v.
3   Oracle Corporation, et al.  Would counsel please note their
4   appearances for the record.
5            MR. MENE:  May it please the Court, Gerard Mene with the
6   U.S. Attorney's Office.  Your Honor, Mr. Sponseller is the
7   assistant on this case.  He's with Judge Cacheris right now, but
8   I'd like to ask the Court that I have three forms for pro hac vice
9   of three Department of Justice lawyers here today, two of whom
10  will be arguing for the government.  I'd like to pass those up to
11  the Court, if I may.
12           THE COURT:  All right, go ahead.  We'll sign those in
13  chambers, but there's no fee involved for the government lawyers,
14  so there shouldn't be any problems.
15           All right, we have on the docket this morning the
16  defendants' motion to dismiss, the two main arguments in the
17  motion to dismiss being, No. 1, that many if not all -- many of
18  the claims in the government's complaint in intervention are time
19  barred, and the second argument being that all of the claims
20  are -- fail to state a claim under 12(b)(6) and therefore should
21  be dismissed.
22           I think those are the only two major arguments the
23  defense is making; am I correct?  Who's going to be the
24  spokesperson for the defense?
25           MS. ITTIG:  Good morning, Your Honor.  I'm Kristen Ittig

4

1  from Arnold & Porter, and we represent Oracle in this matter.  If
2  I may, Your Honor, I'd like to --
3              THE COURT:  I'm sorry, I didn't give you-all a chance to
4  introduce yourself.
5              MS. ITTIG:  Yes, I've love to make the introductions.
6  We have a few people to introduce to you this morning.  First we
7  have Deborah Miller, who is vice president and associate general
8  counsel at Oracle, who's come today for the hearing.
9              THE COURT:  All right.
10             MS. ITTIG:  And my colleague, Drew Harker, who will be
11 handling the oral arguments in this, in this matter, he's been
12 admitted pro hac vice here.  I'd also introduce Cameron Fogle,
13 who's also cocounsel.
14             And I bring you greetings from our cocounsel, John
15 Nassikas, who regrets that he could not be here this morning and
16 sends his regards.
17             THE COURT:  When did he join Arnold & Porter?  Last I
18 knew, he was with, was it Arent Fox?
19             MS. ITTIG:  It was about a year ago that he joined.
20             THE COURT:  All right, very good.  Yes, you can say
21 hello to him from me.
22             MS. ITTIG:  Thank you, Your Honor.
23             THE COURT:  All right.  As I said, there are two issues
24 involved.  Now, both sides have extremely well briefed their
25 positions.  We've read them, so I don't need to have those

1  positions repeated.
2          I'm going to give the government an opportunity to
3  respond to the reply brief from the defendants.  Is there anything
4  you want to add to the record that you don't think you've already
5  put out there?
6          MR. WISEMAN:  Good morning, Your Honor.  David Wiseman
7  for the United States.  We don't have anything to add to the
8  record at this point.
9          THE COURT:  All right.  You know, the interesting
10 argument -- I think one of the most interesting issues in this
11 case is the argument about whether the investigative arm of the
12 inspector general for GSA constitutes the official with the
13 ability to do something about the problem.  That's a very
14 interesting issue.
15         I think the government needs to explain to me why bother
16 having an investigation of that sort during the contracting
17 process if based upon the results of such an investigation, which
18 appear to have shown some problems, action is not taken?
19         MR. WISEMAN:  Thank you, Your Honor.  I'd be happy to
20 address that issue.  I think we have a number of points to make
21 there.  First of all, the -- in the statute of limitations for the
22 False Claims Act, Congress made clear that the statute -- the
23 statutory period should only begin to run when an official charged
24 with responsibility to act in the circumstances has notice of
25 material facts, and I think what we would say here is that GSA

1  OIG, which conducted this audit, does not have any responsibility
2  to bring -- or ability to bring fraud claims.  So we think --
3              THE COURT:  But don't they have a responsibility to
4  alert the Justice Department that something's going on here that's
5  not right?
6              MR. WISEMAN:  If they had -- yes, Your Honor,
7  absolutely.  If they had concluded that something was going on
8  that was not right, I would agree that there would be an argument
9  that they had a responsibility, and then we would be into the,
10 possibly the should-have-known prong of the statute of
11 limitations.
12             I think if we look carefully at the audit reporting
13 question, there was no conclusion there that fraud had occurred.
14 This was a routine audit.  There's nothing in the record to
15 suggest that the impetus for the audit was on some suspicion of
16 fraud.  The audit itself did not conclude that any fraud had
17 occurred or even suggest a suspicion.  It simply said based on
18 this unaudited data that Oracle has given us, that Oracle will not
19 even state is -- necessarily can be reconciled to their financial
20 records, there are some instances when they are giving higher
21 discounts than they have disclosed to us.
22             In fact, that was entirely consistent with what Oracle
23 had said, that in 5 percent of their transactions, they were
24 giving higher discounts than the discounts they had disclosed to
25 the government.

1          So there was -- I think this is very distinguishable
2   from the cases which defendants have pointed out, such as the
3   *Island Park* case or the *Kensington Hospital* case, where there is a
4   report out there in an agency which concludes that fraud has
5   occurred, which concludes that there's an actionable legal claim.
6   In those --
7          THE COURT:  Let me ask you this.
8          MR. WISEMAN:  Sure.
9          THE COURT:  You've got a government agency -- now, who
10  actually -- which agency actually signed the contract?  Was it
11  GSA?
12         MR. WISEMAN:  GSA, yes.
13         THE COURT:  All right.  So you've got GSA investigating
14  the representations, doing a due diligence, so to speak, of the
15  representations from Oracle and finding problems, at least finding
16  problems, finding inconsistencies, and apparently, GSA went ahead
17  anyway and entered into the contract.
18         Why then can't the defense even just argue, forgetting
19  for a minute statute of limitations, you-all, the government
20  basically waived any complaint about this contract as to those
21  particular issues because you knew about them?  The government did
22  know about them.
23         MR. WISEMAN:  Your Honor, yes.  What GSA knew -- let's
24  be clear that what Oracle gave GSA for that audit was six months
25  of unconfirmed financial data; in other words, Oracle itself

1  wouldn't even vouch for the accuracy of the data.  What GSA found
2  was there were occasional examples in that data of discounts
3  higher than were disclosed to the government.
4         Even -- what GSA found there is nothing like what we
5  found in our investigation in terms of the number of instances,
6  the frequency with which Oracle was giving greater discounts, or
7  the percentage of discounts, both of which were in reality much,
8  much higher than was in the data that was disclosed to GSA.  So
9  all that GSA could conclude was yes, we see there are some
10 instances in which higher discounts are being given, but it
11 certainly didn't have the type of information that we have now to
12 know the extent to which Oracle had misrepresented its actual
13 practices.
14         THE COURT:  All right.
15         MR. WISEMAN:  Are there other issues that Your Honor
16 would like me to address?
17         THE COURT:  Not right now.  I'll hear from the
18 defendants.
19         MR. WISEMAN:  Thank you.
20         MR. HARKER:  Your Honor, again, my name is Drew Harker.
21 Thank you very much for letting us be here.
22         The government -- my view is your questions have the
23 issue exactly right.  The purpose of the pre-award audit was to
24 identify any issues with respect to the disclosures that Oracle
25 had made.  This was a chance for the government to identify

1  problems and address them with Oracle and get off on the right,
2  get off on the right foot.
3         The standard that Mr. Wiseman is citing that there was
4  no proof of fraud in the audit report is the wrong standard.  When
5  you look at *Kensington Hospital*, the court said that possession of
6  sufficient critical facts to cause a reasonable person to
7  investigate starts the statute running.
8         Similarly, in *Holloman*, which is included in our papers,
9  the court said, "Actual knowledge of the material facts that a
10 false statement . . . was made and that the statement was made as
11 part of a claim for payment from the government . . . is not
12 necessary to trigger the running of the three-year period."  I'll
13 go on:  "Rather, the start date is when the plaintiff possesses
14 enough knowledge that would lead a reasonable person to
15 investigate whether a false claim was made."
16        And look at the purpose of the audit.  We cited these in
17 our brief, Your Honor, but just, just to reiterate them, under the
18 regulations, pre-award audits, Mr. Wiseman says they were routine.
19 Pre-award audits under the regulations were designed to be done
20 when there was a question about the sufficiency and accuracy of
21 the disclosures.  So the fact that the government went to the
22 trouble of having an audit which took from April of 1998 to
23 September of 1998, a long period of time, is indicative of the
24 fact that the government had questions about those disclosures.
25        What did the, what did the letter requesting the audit

1  say?  The letter requesting the audit said that the purpose of the
2  audit was to, quote, verify that pricing information submitted was
3  current, accurate, and complete.
4          This was in 1998, Your Honor.  This was -- and the
5  government's claim, the sine qua non of the government's claim is
6  that, in fact, today those disclosures were not accurate, current,
7  and complete.
8          Well, that was the purpose of the audit, and as you
9  noted, Your Honor, the audit put GSA on notice that there were
10 questions about the disclosures.  They identified disclosures as
11 high as 40 percent compared to the disclosures which appeared on
12 the disclosure form of 15 to 20 percent.
13         So to -- it's Oracle's position, Your Honor, that you're
14 exactly right, that the audit put the GSA contracting officials
15 plus the Office of Investigations, because that audit report went
16 to the assistant inspector general for investigations, the person
17 who within GSA is charged with investigating fraud, the report
18 went to him.
19         So clearly, there were enough facts to put a reasonable
20 person on notice of the need to investigate.
21         THE COURT:  Were there any exigent circumstances
22 requiring GSA to enter into this contract immediately without
23 further investigation?
24         MR. HARKER:  Not that I'm aware of, Your Honor.
25 Remember, the initial proposal went in in August of 1997.  The

1  contract was awarded in December 1998, so what's that, a 16-month
2  period or so?  So there was a long period of negotiations, but I'm
3  not aware of any kind of need or urgency with respect to getting
4  this contract signed.
5          In fact, what happened was there were a series of
6  extensions that had been granted to the original contract.  This
7  was a follow-on contract, and there were a series of extensions
8  that had been granted, so the government was perfectly fine to
9  continue to order under the prior contract.  There was no
10 emergency urgent and compelling circumstances that said, oh, we
11 have to rush forward and get this contract in place.  There was
12 already a contract in place.
13         THE COURT:  All right, I don't need to hear any other
14 argument.  I mean, I've got this case pretty much -- I pretty much
15 know what I'm going to do with it, and you'll hear from us early
16 next week as to what I'm going to do with it, but I do want to
17 also tell you right now that I'm going to be granting in part and
18 denying in part the defendants' motion.  Some of this complaint is
19 going to survive.
20         I am going to be directing the government to file an
21 amended complaint consistent with my opinion, which you're going
22 to get early next week, and the reason why I didn't just call this
23 case off, because again, it was very well briefed and we've had
24 enough time to look at it, is that this is the kind of case --
25 because I assume the U.S. government is still doing business with

1  Oracle.
2          MR. WISEMAN:  (Nodding head.)
3          THE COURT:  Yeah.  And of course, Oracle as a government
4  contractor does not want to face any kind of fraud charges, which
5  you may still be facing at the end of the day at least with this
6  round of motions practice.  Therefore -- you know where I'm going
7  with this -- if you haven't already tried to see if you can
8  resolve this case, you ought to be thinking about it at this
9  point.
10         The case will be staying on the docket.  It's a
11 complicated opinion, and therefore, I'm not going to read it from
12 the bench.  You're going to get a written opinion early next week,
13 but I strongly suggest that it would be in both sides' interests
14 and probably more in Oracle's interest, frankly, to sit down and
15 either with an outside mediator or Judge Jones as the magistrate
16 judge assigned to this case, he has done many, many settlement
17 conferences, to see whether or not you can come to a resolution,
18 all right?
19         But you'll get our opinion, as I said, early next week.
20 Thank you.
21         MR. WISEMAN:  Thank you.
22                    (Which were all the proceedings
23                     had at this time.)
24
25

13

```
 1                  CERTIFICATE OF THE REPORTER
 2        I certify that the foregoing is a correct transcript of the
 3   record of proceedings in the above-entitled matter.
 4
 5
 6                                        /s/
                                   Anneliese J. Thomson
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```