UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. PAUL FRASCELLA<br><br>v.<br><br>ORACLE CORP., ORACLE AMERICA, et al.<br><br>Defendants. | CASE NO. 1:07cv529 (LMB/TRJ) |

### RELATOR'S NOTICE OF DISCOVERY DISPUTE
### THAT MAY IMPACT THE COURT'S CONSIDERATION
### OF ALTERNATE PROPOSALS IN JOINT DISCOVERY PLAN

Relator Paul Frascella, by undersigned counsel, joins all proposals by the United States in the Joint Discovery Plan submitted by the parties. Relator files this Notice concerning an important discovery dispute that has the potential to affect the timing and sequence of discovery. In sum, the available evidence strongly suggests that Oracle has sought advice from attorneys (without disclosing the full facts to them) to assist the company in an ongoing fraud. Relator seeks to have Oracle generate a privilege log that will enable counsel to identify communications with counsel potentially subject to the crime/fraud exception to the attorney-client privilege, and to request *in camera* review by the Court of those communications.

Oracle entered into the MAS contract at issue in 1998. In 2004, Oracle negotiated to buy a competitor, PeopleSoft Corporation, eventually concluding the purchase of PeopleSoft in December 2004 for over $10 billion. PeopleSoft had its own MAS contract with the Government, and was committing the same fraud. In 2003, Relator James Hicks filed a complaint under seal in the District of Maryland against PeopleSoft, alleging that PeopleSoft had offered much deeper

discounts to commercial customers than it gave to the government.  By at least as early as the summer of 2004, government counsel from the U.S. Attorney's Office in Maryland was in touch with PeopleSoft concerning the government's pre-intervention investigation.

Government counsel in the Hicks case had on again, off again settlement discussions with PeopleSoft and then Oracle for several years.  In the summer of 2006, the Department of Justice informed Oracle that it intended to intervene in the case.  The parties engaged in more serious settlement discussions, culminating in October 2006, with a settlement agreement in which Oracle agreed to pay $98.5 million dollars to settle the government's claims against PeopleSoft.

It is virtually certain that PeopleSoft disclosed the District of Maryland's investigation to Oracle during the negotiations in 2004, and that Oracle and its counsel evaluated PeopleSoft's potential liability before making the acquisition.  It is also virtually certain that Oracle and its counsel evaluated Oracle's potential exposure for the same kind of conduct that PeopleSoft was being investigated for, and considered that exposure when it conducted negotiations with the Government to settle the PeopleSoft case.

Oracle chose not to make voluntary disclosures to the Government about its own conduct.  It also chose to continue its own fraudulent conduct after settling the PeopleSoft case.  Although the MAS contract in issue here ended in 2006, Oracle continues to submit false claims to government agencies for annual updates and technical support, which are calculated at 22% of the original, inflated contract prices.

In August 2010, after the Court unsealed this case, Relator's counsel wrote a letter to Oracle's counsel, asking them to retain communications with counsel related to the PeopleSoft acquisition and Oracle's continuing invoices for updates and technical support. (*See*, Exhibit 1.) On January 13, 2011, the date that the Court issued its Scheduling Order, Relator hand-delivered

his first request for production of documents to Oracle's counsel, seeking, among other things, communications with counsel on those subjects.

Oracle understandably has proposed a discovery plan that would prevent discovery into the PeopleSoft issues and Oracle's communications with its counsel. Relator's counsel believes that requiring Oracle to generate a privilege log will reveal communications where Oracle used the services of counsel to assist it in an ongoing fraud. Counsel will need to identify communications on the log potentially subject to the crime/fraud exception to the attorney-client privilege, and file a motion seeking *in camera* review of those communications. Relator's counsel wanted the Court to have notice of this important dispute as it considered the discovery plan proposals from the parties.

Relator's counsel want to emphasize that they are not impugning the good faith of Oracle's counsel. As Justice Cardozo wrote in 1933:

> There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told. . . . The attorney may be innocent, and still the client must let the truth come out.

*Clark v. United States*, 289 U.S. 1, 15 (1933).

Judge Brinkema has summarized the showing required to demonstrate applicability of the crime/fraud exception:

> For the crime/fraud exception to apply, the movant must make a *prima facie* showing of fraudulent conduct. *United States v. Ruhbayan*, 201 F.Supp.2d 682, 685 (E.D.Va. 2002). This *prima facie* showing has two prongs: "1) that defendant was engaged in or planning a criminal or fraudulent scheme and used his counsel to further the scheme, and 2) that the privileged information bears a close relationship to the criminal or fraudulent scheme." *Id.* at 685-86.

3

*In re Galaxy Computer Services, Inc.*, 2004 U.S.Dist. LEXIS 28162 (E.D.Va. 2004) (Brinkema, J.).

The United States' First Amended Complaint in Intervention provides extensive allegations of an ongoing fraudulent scheme by Oracle to conceal the deeper discounts it gave commercial customers and present inflated, false claims under its MAS contract.  That conduct was continuing when Oracle acquired PeopleSoft, was continuing when Oracle negotiated to resolve the PeopleSoft case without making voluntary disclosures of its own conduct, and continues as Oracle submits inflated invoices to the government for annual updates and technical support.  Oracle doubtless used lawyers at each step, to provide advice about how to evaluate PeopleSoft's liability, compare PeopleSoft's conduct to its own, and to reduce its liability for the deeper discounts it had given commercial customers from the inception of its 1998 MAS contract. Allegedly privileged communications between Oracle and its counsel during the PeopleSoft acquisition, the PeopleSoft settlement negotiations, and during its ongoing submission of inflated invoices for updates and technical support "bear[] a close relationship to the criminal or fraudulent scheme."

        Respectfully submitted,


          /s/
        Christopher B. Mead VSB#39304
        London & Mead
        1225 19th Street, N.W.
        Suite 320
        Washington, D.C.  20036
        (202) 331-3334

Of Counsel:

Mark London
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036
(202) 331-3334

        Counsel for Relator Paul Frascella

## CERTIFICATE OF SERVICE

I certify that on this 26th day of January 2011, a copy of *Relator's Notice of Discovery Dispute That May Impact the Court's Consideration of Alternate Proposals in Joint Discovery Plan* was electronically filed and served on the following:

>Joyce R. Branda
>Sara Mclean
>David B. Wiseman
>Christelle Klovers
>Melissa Handrigan
>Civil Division
>U.S. Department of Justice
>601 D Street, NW, Room 9032
>Washington, DC 20004
>david.wiseman@usdoj.gov

>Richard Sponseller
>Assistant United States Attorney
>United States Attorney's Office
>Justin W. Williams U.S. Attorney Building
>2100 Jamieson Avenue
>Alexandria, Virginia 22314
>richard.Sponseller@usdoj.gov

>Drew Harker (admitted *pro hac vice*)
>John N. Nassikas III
>ARNOLD & PORTER LLP
>555 12th Street, N.W.
>Washington, D.C. 20004
>john.Nassikas@aporter.com
>drew.Harker@aporter.com

>Kristen E. Ittig
>ARNOLD & PORTER LLP
>1600 Tysons Boulevard, Suite 900
>McLean, Virginia 22102-4865
>kristen.Ittig@aporter.com

/s/
Christopher B. Mead